1

2

3

4

5

6

7

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DOUGLAS FERRIE, an individual,

                    Plaintiff,

      vs.

WOODFORD RESEARCH, LLC, a Kentucky
limited liability company; HUBERT SENTERS,
an individual; KAREN ARVIN, an individual;
ROSS GIVENS, an individual; JARED
CARTER, an individual; DPT INNOVATIONS,
LLC d/b/a ARBITRAGING.CO, a
foreign company; DAVID PETERSON a/k/a
JEREMY ROUNSVILLE, an individual;
HORIZON TRUST COMPANY, LLC, a foreign
limited liability company; GREG HERLEAN,
an individual; DANIEL ENSIGN, an individual;
INFOGENESIS CONSULTING GROUP, LLC;
a Nevada limited liability company; KURT F.
WEINRICH, SR., an individual,

                    Defendants.

NO.

**COMPLAINT FOR DAMAGES**

Plaintiff DOUGLAS FERRIE, an individual ("Plaintiff"), by and through undersigned

counsel, sues Defendants WOODFORD RESEARCH, LLC, a Kentucky limited liability

company ("WOODFORD RESEARCH"); HUBERT SENTERS, and individual

("SENTERS"); KAREN ARVIN, an individual ("ARVIN"); ROSS GIVENS, an individual

COMPLAINT FOR DAMAGES - 1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

("GIVENS"); JARED CARTER, an individual ("CARTER"); DPT INNOVATIONS, LLC d/b/a ARBITRAGING.CO, a foreign company ("ARBITRAGING"); DAVID PETERSON a/k/a JEREMY ROUNSVILLE, an individual ("PETERSON"); HORIZON TRUST COMPANY, LLC, a foreign limited liability company ("HORIZON TRUST"); GREG HERLEAN, an individual ("HERLEAN"); DANIEL ENSIGN, an individual ("ENSIGN"); INFOGENESIS CONSULTING GROUP LLC, a Nevada limited liability company ("INFOGENESIS CONSULTING"); and KURT F. WEINRICH, SR., an individual ("WEINRICH") (together, WOODFORD RESEARCH, SENTERS, ARVIN, GIVENS, CARTER, ARBITRAGING, PETERSON, HORIZON TRUST, HERLEAN, ENSIGN, INFOGENESIS CONSULTING, and WEINRICH are "Defendants") for damages.  As grounds therefor, Plaintiff alleges the following:

## I.  PRELIMINARY STATEMENT

1.      Richard Branson is attributed with saying: "People have made fortunes off Bitcoin. Some have lost money.  It is volatile, but people make money off of volatility too."  In late-2018, Defendants participated in a scheme premised upon the ability to exploit volatility in cryptocurrency prices.

2.      Specifically, multiple Defendants claimed that Defendant ARBITRAGING developed and owned a "highly advance arbitrage bot" – called aBOT – that monitored the price of cryptocurrencies on thousands of exchanges worldwide; and that on a daily basis, Defendant ARBITRAGING executed trades that took advantage of differences in price for identical cryptocurrencies.  In other words, if bitcoin were selling for $100 on one cryptocurrency exchange and $101 on a different cryptocurrency exchange, Defendants claimed that Defendant ARBITRAGING would automatically purchase bitcoin for $100 on the first exchange and simultaneously sell that same bitcoin on the second exchange for an immediate 1 percent profit.  Defendants claimed Defendant ARBITRAGING earned an average daily profit of 0.73 percent.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

3.      Relying on Defendants' representations of profitability and the ease with which those profits would be generated for Plaintiff, Plaintiff invested with Defendants a total principal sum of One Hundred Seventy-Seven Thousand One Hundred Seventy-Nine Dollars ($177,179.00).

4.      Despite being told by Defendants that his investment had accrued daily profits, Plaintiff's repeated demands that Defendants return to him his principal and reported profits have been ignored and refused, and if Plaintiff withdraws any funds from his account, he will face a withdrawal fee in excess of 95 percent of his account.

5.      Each Defendant took a portion of Plaintiff's investment.  In sum, Defendants enriched themselves at Plaintiff's expense.

6.      As a result of Defendants' pattern of wrongful conduct, Plaintiff seeks damages in the principal sum of One Hundred Seventy-Seven Thousand One Hundred Seventy-Nine Dollars ($177,179.00), plus lost profits, interest, attorneys' fees and costs, along with any other relief that this Court deems equitable and appropriate.

## II.  THE PARTIES

**A.    Plaintiff.**

7.      Plaintiff DOUGLAS FERRIE ("Plaintiff") is an individual domiciled in the state of Washington and is *sui juris*.

**B.    Defendants.**

8.      Defendant WOODFORD RESEARCH, LLC, is a Kentucky limited liability company ("WOODFORD RESEARCH").

9.      Defendant HUBERT SENTERS ("SENTERS") is an individual domiciled in Kentucky and is *sui juris*.  Defendant SENTERS owns, manages, and controls Defendant WOODFORD RESEARCH.

COMPLAINT FOR DAMAGES - 3

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

10.     Defendant KAREN ARVIN ("ARVIN") is an individual domiciled in Kentucky and is *sui juris*.  Defendant ARVIN manages and controls Defendant WOODFORD RESEARCH.

11.     Defendant ROSS GIVENS ("GIVENS") is an individual domiciled in Kentucky and is *sui juris*.  Defendant GIVENS manages and controls Defendant WOODFORD RESEARCH.

12.     Defendant JARED CARTER ("CARTER") is an individual domiciled in Kentucky and is *sui juris*.  Defendant CARTER manages and controls Defendant WOODFORD RESEARCH.

13.     Defendant DPT INNOVATIONS, LLC d/b/a ARBITRAGING.CO ("ARBITRAGING"), is a fictitious entity based in Singapore.

14.     Defendant DAVID PETERSON a/k/a JEREMY ROUNSVILLE ("PETERSON") is an individual domiciled in Minnesota and is *sui juris*. Defendant PETERSON owns, manages and controls Defendant ARBITRAGING.

15.     Defendant HORIZON TRUST COMPANY, LLC ("HORIZON TRUST") purports to be a New Mexico limited liability company, but no such registration or founding documents appear to exist in the public record.  HORIZON TRUST is registered as a foreign limited liability company in Ohio, claiming to be a New Mexico limited liability company.

16.     Defendant GREG HERLEAN ("HERLEAN") is an individual domiciled in New Mexico and is *sui juris*.  Defendant HERLEAN manages and controls Defendant HORIZON TRUST.

17.     Defendant DANIEL ENSIGN ("ENSIGN") is an individual domiciled in New Mexico and is *sui juris*.  Defendant ENSIGN is a "Self-Directed Specialist" at Defendant HORIZON TRUST, where he administers new account opening services.

18.     Defendant INFOGENESIS CONSULTING GROUP ("INFOGENESIS CONSULTING") is a Nevada limited liability company.

COMPLAINT FOR DAMAGES - 4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

19.     Defendant KURT F. WEINRICH, SR. ("WEINRICH") is an individual domiciled in Nevada and is *sui juris*.  Defendant WEINRICH is the CEO of Defendant INFOGENESIS CONSULTING.

### III.  JURISDICTION AND VENUE

20.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the laws of the United States.

21.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

23.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.  In light of the foregoing, this District is a proper venue in which to adjudicate this dispute.

### IV.  GENERAL FACTUAL ALLEGATIONS

24.     For several years, Plaintiff has followed Defendant SENTERS' "Hubert Senters Daily Video Update."

25.     In the video update, Defendant SENTERS discusses price trends of stocks and commodities to predict future prices.

**A.     Defendants Woodford Research, Senters and Arvin.**

26.     On or around November 30, 2018, Defendants WOODFORD RESEARCH, SENTERS and ARVIN published a presentation online regarding "The 1% Club."

27.     In connection therewith, Defendants WOODFORD RESEARCH, SENTERS, and ARVIN described a new investment opportunity involving arbitraging cryptocurrencies, wherein they made the following material representations and statements:

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

(i)      There are approximately 200 exchanges and over 2,000 cryptocurrencies. Defendant ARBITRAGING developed a "highly advanced arbitrage bot" that tracked all of the exchanges and searched for the largest price differentials in each cryptocurrency.  Upon finding sufficient price differentials, ARBITRAGING executed trades to exploit those differentials;

(ii)      On a daily basis, Defendant ARBITRAGING totaled the profits and distributed those earnings to investors based upon a pro rata share of their investment;

(iii)      Defendant ARBITRAGING published the return rate every day, and distributed profits in accordance with the published return rate;

(iv)      Defendant ARBITRAGING had distributed profits to investors consistent with the published rate and would continue to do so in the future;

(v)      Defendant ARBITRAGING consistently received an average rate of return of 0.73 percent within the seven-month period preceding December 2018.  In other words, an investor's money doubled every three months;

(vi)      Since cryptocurrency trading occurs 24 hours a day, seven days per week, Defendant ARBITRAGING generated higher turns than trading traditional assets on traditional markets, where trading is limited to eight hours a day, five days a week;

(vii)      An initial investment of $100,000 would have a value of over $1.4 million dollars in one year if no funds are withdrawn;

(viii)      This opportunity only arises once in a generation;

(ix)      After cryptocurrency exchanges are heavily regulated, the number of exchanges, cryptocurrencies, and opportunities will greatly diminish;

(x)      Projected returns of 0.73 percent per day will likely remain available for another 18 to 24 months;

(xi)      Defendant ARBITRAGING had been thoroughly scrutinized by both Defendant SENTERS' own WOODFORD RESEARCH team as well as by members of the Masterminds Association, where he is also a member;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

(xii)     The Masterminds Association constantly searches for new investment opportunities, thoroughly analyzes each potential investment on a risk/reward basis and then makes a recommendation based on the analysis and a group discussion;

(xiii)    Considerable due diligence was undertaken to ensure that both Defendant ARBITRAGING and Defendant PETERSON were legitimate and trustworthy;

(xiv)    He has been in contact with Defendant PETERSON and confirmed that Defendant Peterson is based in the United States; Defendant ARBITRAGING is registered in the United States; and any disputes involving ARBITRAGING-related investments could be resolved in Courts in the United States;

(xv)     The only risk is the setup procedure; if it is followed cautiously and precisely according to the procedure he provides, then risk is eliminated;

(xvi)    There is an early withdrawal penalty if funds are withdrawn within the first three weeks of opening an account.  After three weeks, there would be no withdrawal penalty;

(xvii)   Account setup required an investor to first purchase Ether (ETH), then use ETH to purchase ARBs on Defendant ARBITRAGING's website, at which point, the daily account value, rate of return, and earnings would be denominated in US dollars on an investors' account on Defendant ARBITRAGING's website;

(xviii)  The investment would come with online support, telephone support and 30-minute support sessions;

(xix)    No other fees or assessments; and

(xx)     Enter an affiliate code on Defendant ARBITRAGING's website during the registration process to obtain additional perks, such as an invitation to the 1% Club Telegram group chat.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

28.     After reviewing Defendant SENTERS' representations and statements, including taking notes on them, Plaintiff conducted internet searches pertaining to Defendants ARBITRAGING and PETERSON.

29.     Plaintiff's internet searches revealed positive reviews of Defendants ARBITRAGING and PETERSON.

30.     Accordingly, on December 1, 2018, Plaintiff solicited information to invest in Defendant ARBITRAGING's investment opportunity.

31.     First, Defendants WOODFORD RESEARCH and SENTERS directed Plaintiff to contact Defendant HORIZON TRUST.

**B.     Defendants Horizon Trust, Herlean, Ensign, InfoGenesis and Weinrich.**

32.     On or about December 2, 2018, Defendants HORIZON TRUST and HERLEAN emailed Plaintiff to solicit Plaintiff's investment.

33.     Defendant HERLEAN indicated that a recommendation by Defendant SENTERS was a valuable lead, and then introduced Plaintiff to Defendants ENSIGN, INFOGENESIS CONSULTING and WEINRICH.

34.     Defendant HERLEAN instructed Plaintiff to follow the advice and instruction of Defendants HORIZON TRUST, ENSIGN, INFOGENESIS CONSULTING, and WEINRICH.

35.     Defendant HERLEAN advised that he would supervise Defendants HORIZON TRUST and ENSIGN, and oversee the transfer and investment of Plaintiff's investment funds into Defendant ARBITRAGING's arbitraging opportunity.

36.     Regarding purchasing ETH to then purchase ARBs, Plaintiff asked Defendant ENSIGN whether he could purchase ETH on the popular cryptocurrency exchange, Coinbase. On or about December 7, 2018, Defendant ENSIGN advised that any deviation from the account setup procedure would require confirmation and approval from Defendant HERLEAN and Defendant ENSIGN discussed these issues with Defendant HERLEAN.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

37.     On or about December 10, 2018, Defendant ENSIGN informed Plaintiff that he could only purchase ETH on the cryptocurrency exchange Gemini Trust Company to convert his investment funds from USD to ETH because Gemini accepts institutional accounts, whereas Coinbase does not.

38.     Defendant ENSIGN represented that many clients were setting up self-directed IRA retirement accounts at Defendant HORIZON TRUST to invest in Defendant ARBITRAGING's arbitrage program.

39.     Defendant ENSIGN emphasized that it was critical for Plaintiff to transfer his investment funds as quickly as possible to commence earning income to maximize the compounding effect on returns earned on Plaintiff's retirement funds.

40.     On or about December 15, 2018, Defendants HORIZON TRUST, HERLEAN and ENSIGN handed off Plaintiff to Defendants INFOGENESIS CONSULTING and WEINRICH.

**C.     The Purchase Process.**

41.     On or about December 15, 2018, Defendants INFOGENESIS and WEINRICH directed and walked Plaintiff through the next steps to fund my account in the arbitrage trading program had been attached.

42.     Defendants INFOGENESIS and WEINRICH advised Plaintiff on how to withdraw funds from his retirement accounts, including providing tax advice relating to early withdrawal penalties and best practices on structuring entities involved in the transactions.

43.     With Defendants INFOGENESIS and WEINRICH, Plaintiff setup and registered DCAE Ltd., LLC ("Plaintiff-DCAE").  Under the name of Plaintiff-DCAE, Plaintiff opened a bank account at Bank of America and a cryptocurrency account at the Gemini exchange.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

44.     Together with and at the direction of Defendants HORIZON TRUST, HERLEAN, ENSIGN, INFOGENESIS, and WEINRICH, Plaintiff proceeded to withdraw his retirement funds from his investment accounts.

45.     Next, Plaintiff wired money from his retirement account to Defendant HORIZON TRUST.

46.     Defendant HORIZON TRUST then wired the retirement funds to Plaintiff-DCAE's Bank of America bank account.

47.     Then, Plaintiff-DCAE transferred the funds to its Gemini cryptocurrency account.

48.     Then, Plaintiff-DCAE exchange the investment funds (in US dollars) into Ether (ETH).

49.     Then, Plaintiff-DCAE used MetaMask[1] to deposit his ETH into his new account at Defendant ARBITRAGING.

**D.     Plaintiff's Investment on Defendant Arbitraging's Website.**

50.     In total, Plaintiff invested $166,000 of his retirement, health savings account (HSA), and personal funds at Defendant ARBITRAGING.

51.     At all times material, Plaintiff's account on Defendant ARBITRAGING's website reported earnings distributions between 0.5 to 1.0 percent on a daily basis.

52.     On Defendant ARBITRAGING's Terms of Use, section 1.4 states in pertinent part that Defendant Arbitraging would only charge a "3% success fees":

> Longs win 100% of the value of the aBOT trades 0.51-1.25% of
> your aUSD contracts in each 24 hour period. (Minus 3% long

---

[1] MetaMask is a popular online interface that allows ETH holders to send and receive ETH from their web browsers.  MetaMask is a plug-in, similar to a bookmarked webpage, that functions like an easily-accessible cryptocurrency wallet in addition to allowing users to run Ethereum-based decentralized applications from their browsers.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

success fees; fee deducted from your total aUSD increase at close
of your aBOT group period).

53.      Plaintiff first funded his ARBITRAGING investment account with a total of
$12,000 (twelve thousand dollars) and monitored the activity through December 31, 2018.

**E.      First Investment: $12,000.**

54.      Plaintiff decided to monitor his investment through December 31, 2018 to
determine whether Defendant SENTERS' representations were consistent with actual
performance.

55.      After reviewing the data on December 31, 2018, Plaintiff drew the following
conclusions from the activity reported on his ARBITRAGING investment account:

(i)      The daily return ranged from 0.57 to 1.01 percent;

(ii)     The average daily return deposited into Plaintiff's account from
inception to December 31, 2018 was 0.644 percent;

(iii)    Plaintiff's actual rate of return was 5 percent less than the aBOT's
reported return; and

(iv)    The average daily return of 0.644 percent was relatively close to the 0.73
percent that Defendants WOODFORD RESEARCH, SENTERS, ARVIN, GIVENS, and
CARTER had reported, especially given that Plaintiff's investment only offered a brief window
of exposure.

**F.      The First Shutdown.**

56.      On January 1, 2019, a special notice appeared on Defendant ARBITRAGING's
website after Plaintiff logged into his account.  The notice stated that accountholders would not
be able to log onto the website for several days while improvements were being made to the
underlying system.  The notice stated that trading would not be interrupted during the system
update, but earnings would not be recorded until the system came back online.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

57.     On or about January 2, 2019, Defendant ARBITRAGING's website went offline, where it remained, until on or about January 5, 2019.

58.     On Friday, January 4, 2019, Plaintiff emailed a message to Defendant WOODFORD RESEARCH's support email (help@woodfordresearch.com) to inquire about the offline situation.

59.     On Monday, January 7, 2019, Defendant ARVIN explained that everything was fine, the ARBITRAGING system had previously gone offline for updates, and aBOT would continue to execute trades to generate profits for accountholders, even while the system was offline:

> The closed exchange does mean that we can't sell our profits right now, but aBOT is still earning and those earnings are being deposited into our accounts. The exchange is being re-vamped to protect the site from price manipulation while still allowing ARB owners to buy and sell freely.

> These last two weeks are the first time I have known the site to undergo maintenance since it was opened in April. I have no doubt that once the developers finish coding a working exchange, it will come back up and stay up.

60.     On or about January 5, 2019, Defendant ARBITRAGING's website came back online.

61.     At that time, Defendant ARBITRAGING reported a 2.54 percent profit in Plaintiff's account, or 0.635 percent per day during the offline period.

62.     The result was consistent with the special notice and Defendant ARVIN's representations.

**G.     Figuring out the System.**

63.     On or about January 5, 2019, Defendant ARBITRAGING published an "Announcement" on its website, stating that "an audit" had "uncovered high volume trading in approximately 300 Accounts," which practice ran contrary to Defendant ARBITRAGING's stated goal of providing "gradual appreciation" in each account holder's investment.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

64.     As a result, Defendant ARBITRAGING announced: (i) a 50 percent charge on earnings attributed to these "high volume trading" accounts applied over the next 30 days; and (ii) a 10 percent charge against earnings to pay for the audit on the approximately 3,000 other accounts, unless the accountholder clicked the new "Audit" button and selected the 0 percent deduction option.

65.     Plaintiff was able to avoid the foregoing fees because (i) his account was not a "high volume trading" account; and (ii) he was able to opt out of the Audit fee.

66.     On or about January 13, 2019, Plaintiff emailed Defendant ARVIN requesting a discontinuance of the unauthorized 2-percent referral commission.

67.     On or about January 14, 2019, Defendant ARVIN responded: "[The 2 percent referral fee] was addressed by [Defendant] Hubert in the live member webinar on 1/3/19. Please refer to that recording for details."  Defendant ARVIN continued: "As of now, there is no mechanism on our account or yours to end the affiliate relationship. The information that you received from arbitraging.co was incorrect. If you want to end that relationship, you may do so by closing your current arbitraging.co account and opening a new account using a different link. That is currently the only way to remove an affiliate from either side."

68.     Consequently, Plaintiff identified the source of the additional 2-percent commission.  Since the account value was small, Plaintiff decided to tolerate the 2-percent referral commission charge being earned by Defendant SENTERS on the daily earnings on the Plaintiff's account without the Plaintiff's consent.   However, Plaintiff would ensure that any new accounts not utilize the affiliate code to avoid paying the 2-percent referral commission charge.

69.     Having figured out the inner workings of Defendant ARBITRAGING's website, Plaintiff felt that he had figured out how to properly navigate Defendant ARBITRAGING's website and understood its inner workings.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

COMPLAINT FOR DAMAGES - 13

70.     In addition, as of January 15, 2019, Plaintiff's reported average daily return was 0.622 percent from inception, which was close to his anticipated daily return of 0.73 percent.

71.     Based on the foregoing, Plaintiff decided to make a second, more substantial investment onto Defendant ARBITRAGING's arbitraging program.

**H.     Second Investment: $140,000.**

72.     Based upon the instructions provided Defendants WOODFORD RESEARCH, SENTERS, ARVIN, GIVENS, CARTER, HORIZON TRUST, HERLEAN, ENSIGN, INFOGENESIS, and WEINRICH, Plaintiff repeated the process involved in making his initial investment of $12,000 on Defendant ARBITRAGING's investment program.

73.     On or about January 17, 2019, Plaintiff funded his ARBITRAGING account with $45,000.

74.     On or about January 18, 2019, Plaintiff funded his ARBITRAGING account with an additional $95,000.

75.     On or about January 19, 2019, Plaintiff's $140,000 investment in his ARBITRAGING account was reduced to $134,124.14 due to transaction fees and costs.

76.     Thereafter, arbitrage trading commenced.

77.     As soon as trading had commenced, Plaintiff immediately noticed improper fees, including a 5-percent commission instead of the 3-percent success fee, described above.

78.     Plaintiff emailed Defendant ARBITRAGING about the 5-percent commission. Defendant ARBITRAGING replied that it did not understand Plaintiff's inquiry. A few days later, Defendant ARBITRAGING replied that Plaintiff was not being charged a 5-percent commission. A few days after that, Defendant ARBITRAGING wrote to Plaintiff, "You should read the Terms of Use document, the 5% commission is clearly detailed."

79.     When Plaintiff informed Defendant ARBITRAGING that the Terms of Use only disclose a 3 percent commission, Defendant ARBITRAGING did not respond.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

80.     Still, Plaintiff's average daily return was 0.571 percent, so even though Plaintiff was irritated by the fees, he nevertheless remained pleased with his overall earnings.

**I.     Third Investment: $25,179.**

81.     As of February 25, 2019, Defendant ARBITRAGING continued to report daily earnings in excess of 0.5 percent.

82.     Consequently, Plaintiff decided to invest funds from his health savings account (HSA) into the program.

83.     Once again, Plaintiff followed the procedures as instructed by Defendants WOODFORD RESEARCH, SENTERS, ARVIN, GIVENS, CARTER, HORIZON TRUST, HERLEAN, ENSIGN, INFOGENESIS, and WEINRICH.

84.     On or about February 25, 2019, Plaintiff funded his HSA account with $25,179.

85.     After accounting for fees, on or about February 26, 2019, Plaintiff's account on Defendant ARBITRAGING posted a balance of $184,045.59.

86.     Arbitrage trading of the increased balance commenced immediately.

**J.     The March 23, 2019 Announcement.**

87.     On or about March 23, 2019, Defendant ARBITRAGING published an "Announcement" on its website.

88.     The Announcement stated that Defendant ARBITRAGING would, effective on March 24, 2019, begin applying additional fees to the daily earnings of every account.

89.     Some of the more oppressive fees include, but are not limited to:

(i)     Requiring daily earnings to be limited to 500 ARBs (approximately $400.00) unless the account holder has at least 50,000 ARBs invested in Defendant Arbitraging's Vault.

(ii)     5 percent daily earning fee on accounts with an Active aBot value of between $25,000 and $99,999;

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

(iii)      7 percent daily earning fee on accounts with an Active aBot value of $100,000 or greater; and

(iv)      Withdrawal fees and extremely unfavorable  and arbitrary exchange rate formulations that would translate into losing approximately 95 percent of all funds invested.

90.      However, these percentage charges were based upon gross profits, not net profits.  Consequently, the fees resulted in a net negative return for accounts with an Active aBot value of $100,000 or more.

91.      On or about March 28, 2019, Defendants WOODFORD RESEARCH, SENTERS and ARVIN denied any knowledge of the basis for or implementation of the new fees charged on Defendant ARBITRAGING's website.

92.      Nevertheless, Defendants WOODFORD RESEARCH and SENTERS repeatedly stated that they did not care about the changes in fee structures because they were still making a lot of money.

93.      Defendant SENTERS then confessed to be being one of the high volume account holders that made a majority of profits by trading on Defendant Arbitraging's internal exchange.

94.      In other words, even though Defendants WOODFORD RESEARCH, SENTERS and ARVIN claimed to generate a 0.73 percent daily return simply by taking advantage of Defendant ARBITRAGING's aBOT arbitrage program without any intervention by any investor, Defendant SENTERS now disclosed that his profit had not been obtain through such measures.

95.      On or about April 16, 2019, Plaintiff wrote an email to Defendants WOODFORD RESEARCH and SENTERS requesting the email address of Defendant PETERSON along with the current address and telephone number of Defendant ARBITRAGING.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

96.     On or about April 17, 2019, Defendant ARVIN responded, "We are customers on the arbitraging.co site just as you are. We don't know David Peterson or have any contact information for him. I did catch him on Telegram one time a few months ago, but that is the extent of our contact with him."

97.     If the accounts had been set in accordance with all reinvestment settings as advertised, before the various fees, charges, commissions, penalties and other scams commenced, the primary account value would be valued at forty-two thousand, four hundred forty-seven dollars and eighty-five cents ($42,447.85) and the DCAE account would be valued at four hundred forty-one thousand, three hundred seven dollars and twenty cents ($441,307.20).  The total account value would be four hundred eighty-three thousand, seven hundred fifty-five dollars and five cents ($483,755.05).

98.     As a result of Defendants actions and failure to act, Plaintiff has suffered damages in excess of $75,000.

## V.  CLAIMS FOR RELIEF

### Count I
### Violations of Section 5(a) and (c) of the Securities Act
### (All Defendants)

99.     Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

100.    Federal securities laws require that companies disclose certain information through the registration with the SEC of the offer or sale of securities.  This information allows investors to make informed judgments about whether to purchase a company's securities.

101.    By engaging in the conduct described above, Defendants offered and sold securities – called ARBs – without a registration statement in effect and without an exemption from registration.

102.    From at least December 2018 to March 2019, Defendants conducted an offering of securities, in the form of ARBs.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

103.    In connection with this offering, Defendants sold ARBs to investment funds and other wealthy investors and sold another portion of the tokens through a process culminating in the sale of ARBs to Plaintiff between December 2018 and March 2019.

104.    The offering and component sales were required to be registered with the SEC unless an exemption applied.

105.    However, neither the offering nor component sales were registered with the SEC, and no registration exemption applied to the offering or to any of these sales.

106.    Defendants received a total of approximately One Hundred Seventy-Seven Thousand, One Hundred Seventy-Nine Dollars ($177,179) in connect with the offering and sale of ARBs to Plaintiff.

107.    Plaintiff bought ARBs through the offering and component sales as an investment of money in a common enterprise with Defendants, which he reasonably expected profits to derive from the entrepreneurial and managerial efforts of Defendants.

108.    In reliance on the representations made to Plaintiff by Defendants, Plaintiff was one of the investors who purchased ARBs.

109.    Defendants did not file a Form D with the SEC with respect to the ARBs offered and sold; those offers and sales were not exempt from registration under Regulation D, which was promulgated under the Securities Act.  The exemption does not apply because Defendants' offer and sale of ARBs to the general public was not limited to accredited investors.

110.    In addition, Defendants did not exercise reasonable care to assure that the purchasers of ARBs were not statutory underwriters of Defendant Arbitraging within the meaning of Section 2(a)(11) of the Securities Act.

111.    As a result of the conduct described above, Defendants violated Section 5(a) of the Securities Act, which states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

such security through the use or medium of any prospectus or otherwise; or to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

112.    Also as a result of the conduct described above, Defendants violated Section 5(c) of the Securities Act, which states that it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security.

113.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages in excess of $75,000.

**Count II**
**Breach of Contract**
**(Defendant Arbitraging)**

114.    Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

115.    Plaintiff and Defendant Arbitrating entered into a contract as documented by Defendant Arbitraging's Terms of Use. *See* Exhibit 1 (composite).

116.    Plaintiff performed all of its obligations under the Terms of Use.

117.    Defendant Arbitraging breached the Terms of Use when Defendant Arbitraging, *inter alia*, accepted and retained Plaintiff's transfer of value, created new fees and charges; charged Plaintiff unreasonable and arbitrary fees and changes; restricted Plaintiff's access to his investment; restricted Plaintiff's ability to withdraw his investment; constructively seized possession of Plaintiff's investment; and failed to generate and distribute daily reported earnings as set forth in the Terms of Use, among other material breaches.

118.    As a result, Plaintiff has suffered damages in an amount exceeding $75,000.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Count III**
**Fraudulent Misrepresentation**
**(All Defendants)**

119.   Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

120.   Defendants made false misrepresentations of material facts regarding their products, goods and services, including their involvement in the production, development, and functionality of Defendant Arbitraging's "highly advanced" arbitraging bot, the legitimacy of Defendant Arbitraging's services, including the existence of a functioning "highly advanced" arbitraging bot, the ability to generate steady returns from arbitraging cryptocurrencies among different exchanges, and the legitimacy of profits derived from arbitraging cryptocurrencies as opposed to generating commissions based on new investments, among other fraudulent misrepresentations.

121.   Defendants knew the statements were false when making such statements, and knew that they had no intent to perform their obligations under the Agreements.

122.   Defendants intended for Plaintiff to rely on the false statements.

123.   Plaintiff justifiably relied on the false statements when Plaintiff invested in ARBs on Defendant Arbitraging's website.

124.   Plaintiff suffered damages in an amount exceeding $75,000 due to his reliance on Defendants' false and misleading statements and their refusal to satisfy any of their agreed obligations.

**Count IV**
**Negligent Misrepresentation**
**(All Defendants)**

125.   Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

126.   Defendants made negligent misrepresentations of material facts regarding their products, goods and services, including their involvement in the production, development, and

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

functionality of Defendant Arbitraging's "highly advanced" arbitraging bot, the legitimacy of Defendant Arbitraging's services, including the existence of a functioning "highly advanced" arbitraging bot, the ability to generate steady returns from arbitraging cryptocurrencies among different exchanges, and the legitimacy of profits derived from arbitraging cryptocurrencies as opposed to generating commissions based on new investments, among other fraudulent misrepresentations.

127. Defendants negligently, recklessly, and/or wantonly made materially false, misleading and inaccurate statements without taking reasonable steps to ensure whether the information, representations, and statements they made were true or accurate.

128. Defendants intended for Plaintiff to rely on their negligent statements.

129. Plaintiff justifiably relied on the false statements when Plaintiff invested in ARBs on Defendant Arbitraging's website.

130. Plaintiff suffered damages in an amount exceeding $75,000 due to his reliance on Defendants' negligent misstatements and misrepresentations of material fact.

**Count V**
**Fraudulent Concealment**
**(All Defendants)**

131. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

132. Defendants had a duty to disclose to Plaintiff material information when they made partial or outright false disclosures that conveyed a false impression regarding the nature of Defendant Arbitraging's products, goods, and services, including the absence of the featured "highly advanced" arbitraging bot.

133. Defendants had a duty to disclose to Plaintiff material information when they solicited and accepted Plaintiff's investment.

134. Defendants intentionally concealed material information that was otherwise unknown to Plaintiff and intended to deceive Plaintiff by concealing such information,

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

including but not limited to: Defendants receipt of a portion of Plaintiff's investment via commissions, referral fees, and other charges of a portion of his investment; Defendants were not making daily returns of approximately 0.73 percent exclusively based on arbitrage trading; Defendants would charge numerous undisclosed and oppressive fees after receipt of Plaintiff's investment; and Defendants did not have a "highly advanced" arbitraging bot, among other concealments.

135.    Plaintiff acted in justifiable reliance on the Defendants' concealment when it performed its obligations under the Agreements.

136.    Plaintiff suffered damages in an amount exceeding $75,000 as a result of its justifiable reliance on Defendants' fraudulent concealment.

### Count VI
### Unjust Enrichment
### (All Defendants)

137.    Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

138.    Plaintiff conferred a benefit upon Defendants when he made an investment on Defendant Arbitraging's website platform.

139.    At all times material, each and every Defendant reaped a portion of Plaintiff's investment in the form of commissions, referral fees, and other charges.

140.    Defendants knowingly received and retained these benefits.

141.    Under the circumstances – whereby Defendants conspired to conceal the true nature of Plaintiff's investment for the ulterior purpose of drawing commissions, fees, and charges from Plaintiff – it would be inequitable and unjust to allow Defendants to retain these benefits.

142.    Defendants are liable to Plaintiff in an amount to be proven at trial which is in excess of $75,000.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## Count VII
### Alter Ego Liability
### (Individual Defendants)

a. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

143. Upon information and belief, at all times material hereto, Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich were the principals, agents, managers, alter-egos, officers, directors, advisors, or employees of their respective entities (Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting).

144. Upon information and belief, at all times material hereto, Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich acted within the scope of their agency, affiliation, management, alter-ego relationship and/or employment of their respective entities, Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting.

145. At all times material, Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich actively participated in or subsequently ratified and adopted, or both, all of the acts or conduct taken by their respective entities, Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting, with full knowledge of all of the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

146. Upon information and belief, there exists, and at all times material hereto existed, a unity of interest and ownership by Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich with respect to their respective entities, Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting, such that any individuality and/or separateness between them has ceased to exist.

147. Upon information and belief, Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting were mere shells, instrumentalities, and conduits

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

through which their respective principals, Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich carried on their business for their sole benefit.

148.   Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting were and are controlled, dominated, and operated by Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich as their individual businesses and alter egos.

149.   Upon information and belief, Defendants have intermingled their assets and obtained assets from other Defendants to suit their convenience and to evade liability to Plaintiff, if not other additional obligations.

150.   Upon information and belief, the Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich have used their own assets, and those of Defendants Arbitraging, Woodford Research, Horizon Trust, and InfoGenesis Consulting, for personal use and obtained funds from other Defendants' business accounts for their own personal use.

151.   Under the facts and circumstances present herein, adhering to the fiction of separate entities would sanction a fraud and/or promote injustice, because Plaintiff, as a victim of Defendants' wrongdoing, would suffer injury.

152.   In light of the foregoing, Plaintiff is entitled to a judgment against the Defendants Peterson, Senters, Arvin, Givens, Carter, Herlean, Ensign, and Weinrich jointly and severally, in a sum according to proof at trial, plus interest at the maximum rate allowed by law and reimbursement of costs.

153.   As a result thereof, Plaintiff was injured in an amount exceeding $75,000.

**Count VIII**
**Civil Conspiracy**
**(All Defendants)**

154.   Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 98 inclusive, as if they were fully set forth herein.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

155.    Since in or around December 2018, Defendants agreed and combined to engage in a conspiracy in the following manner:

      (i)    Defendants heavily promoted the offering and sale of an unregistered, non-exempt security, namely, ARBs;

      (ii)    Defendants collectively advertised, pushed, promoted, and encouraged investors to invest funds at Defendant Arbitraging for the purpose of drawing commissions, referral fees, and other charges to deprive Plaintiff of his entire investment in ARBs; and

      (iii)    Defendants engaged in scheme to host the offering and sale of ARBs by an offshore entity in an attempt to avoid any accountability.

156.    Defendants agreed and combined to engage in a civil conspiracy to commit the unlawful acts as described herein.

157.    Defendants combined to engage in a civil conspiracy of which the principal element was to inflict wrongs against and injury on Plaintiff and the public at large as described in this Complaint.

158.    Defendants combined to engage in a civil conspiracy that was furthered by overt acts.

159.    Defendants understood, accepted, or explicitly or implicitly agreed to the general objectives of their scheme to inflict the wrongs and injuries on the Plaintiff as described in this Complaint.

160.    Defendants acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and injury on Plaintiff as described in this Complaint.

161.    Defendants combined to engage in a scheme that was intended to violate the law, and Defendants concealed and secreted such violations.

162.    Defendants combined to engage in a scheme which was intended to violate the rights of Plaintiff.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

163.    Defendants, by virtue of their offices, agency, understandings, and specific acts had the power and influence and exercised the same to cause the unlawful offer and sale of ARBs as described herein.

164.    Defendants jointly participated in, and/or aided and abetted, Defendant Arbitraging's misconduct.

165.    As a result of the foregoing, Plaintiff has suffered damages in an amount exceeding $75,000.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff DOUGLAS FERRIE, respectfully requests that this Court enter a final judgment on all of Plaintiff's claims awarding damages in favor of Plaintiff and against Defendants in an amount to be determined at trial, but in no event less than $177,179.00, plus interest, attorneys' fees and costs.

## VII.  RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

RESPECTFULLY SUBMITTED AND DATED this 28th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

COMPLAINT FOR DAMAGES - 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

David C. Silver*
Jason S. Miller*
Todd R. Friedman*
SILVER MILLER
11780 West Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000
Email: dsilver@silvermillerlaw.com
Email: jmiller@silvermillerlaw.com
Email: tfriedman@silvermillerlaw.com

*Pro Hac Vice Application Forthcoming

*Attorneys for Plaintiff*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

COMPLAINT FOR DAMAGES - 27